UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ELENOR S., <br><br>       Plaintiff, <br><br>  v. <br><br>COMMISSIONER OF SOCIAL SECURITY, <br><br>       Defendant. | Case No. C21-5781 DGE <br><br>**ORDER AFFIRMING DENIAL OF BENEFITS** |

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for disability insurance benefits. Plaintiff contends the ALJ erred by (1) rejecting her testimony; (2) rejecting the physical capacity opinions of Frederick Thompson, M.D., Terri Jo Lientz, DPT, and Marsha Hiller, PT; and (3) rejecting the mental capacity opinions of Diana Tognazzini, Ph.D., Daniel Wanwig, M.D., and Lori TeSelle-DeLisa, M.A.  (Dkt. No. 9 at 1–2.)  As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff is 63 years old, has at least a high school education, and has worked as a corrections officer.  (Dkt. No. 7, Admin. Record ("AR") 47.)  On September 21, 2015, Plaintiff applied for benefits, alleging disability as of June 29, 2015.  (AR 216.)  Plaintiff's applications

ORDER AFFIRMING DENIAL OF BENEFITS - 1

were denied initially and on reconsideration. (AR 187–212.) On June 20, 2018, ALJ Joanne Dantonio held a hearing on Plaintiff's claims.[1] (AR 77–146.) ALJ Dantonio then issued a decision finding Plaintiff not disabled. (AR 216–39.)

The Appeals Council remanded the ALJ's decision on April 20, 2020. (AR 248–53.) The Appeals Council determined the ALJ did not properly consider Plaintiff's testimony, and did not adequately consider the vocational issues in the case. (AR 250–52.)

On remand, the ALJ held a new hearing. (AR 148–86.) The ALJ then issued a new decision, dated December 2, 2020, again finding Plaintiff not disabled. (AR 15–49.) In relevant part, the ALJ found Plaintiff had severe impairments of bilateral knee osteoarthritis, mild left shoulder tear, lumbosacral sprain, right hip sprain, right thigh muscle strain, and obesity. (AR 18.) The ALJ found Plaintiff had the residual functional capacity to perform medium work, with additional exertional, manipulative, postural, and environmental limitations. (AR 22–23.)

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (AR 1–3.)

### III.   DISCUSSION

This Court may set aside the Commissioner's denial of social security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The ALJ is responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Although the Court is required to examine the record as a whole, it may neither reweigh the evidence nor

---

[1] ALJ Dantonio held a hearing on February 12, 2018, but Plaintiff was not present as she was in the emergency room. (AR 59–75.)

substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *Ford*, 950 F.3d at 1154. This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### A.     Plaintiff's Testimony

Plaintiff contends the ALJ erred by failing to give clear and convincing reasons for discounting her testimony regarding the severity of her impairments. (Dkt. No. 9 at 2–7.) Plaintiff testified she has back, hip, and knee pain that limits her mobility and lifting ability. (AR 94, 102–03, 157, 458, 463.) She testified she needs to recline or lay down for about three hours in a typical eight-hour day due to swelling in her knees and low back pain. (AR 158.) She testified she can sit for 20 minutes before needing to change positions. (AR 159.) She testified she can walk for about 30 minutes at a time. (AR 160.)

Plaintiff testified at the hearing in 2018 that she dropped things easily with her right hand due to carpal tunnel syndrome. (AR 118.) At the second hearing, after she had undergone surgery to address that issue, she testified her hand issues were about the same, and she could only use her hands for about 10 minutes at a time. (AR 159.)

Plaintiff testified her depression and anxiety prevent her from working. (AR 101.) She testified she has panic attacks two to three times a week, triggered by going out in public. (AR 161.) She reported she has difficulty focusing and concentrating. (AR 109, 463.)

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective

ORDER AFFIRMING DENIAL OF BENEFITS - 3

medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)).  If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so.  This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15).

The ALJ found Plaintiff met the first step, but discounted her testimony regarding the severity of her symptoms.  The ALJ reasoned Plaintiff's testimony was undermined by the fact that she gave contradictory statements in the record, was inconsistent with the medical evidence, and was inconsistent with her daily activities.  (*See* AR 24–39.)  The ALJ did not err in discounting Plaintiff's testimony on these bases.

The ALJ did not err in rejecting Plaintiff's symptom testimony because she made inconsistent statements throughout the record.  An ALJ may reject a claimant's testimony when the claimant makes inconsistent statements concerning her symptoms.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  For example, Plaintiff testified she cannot concentrate enough to read anymore.  (AR 92.)  However, Plaintiff admitted to providers she read often, and was able to read through a vocational report, her workers' compensation claim, and the Washington Administrative Code well enough to discuss them with her attorney.  (*See, e.g.*, AR 854, 881, 1150, 1153, 1188, 1253, 1297.)  Plaintiff testified she could not work due to pain and mental health symptoms.  (*See* AR 94, 101, 159.)  Yet, she told one examiner if she could get a job at a location other than the island[2] on which she had previously worked, she "would be fine."

---

[2] Plaintiff worked at McNeil Island and alleged she was injured during an incident on the ferry to the island.  (*See* AR 666, 780.)

ORDER AFFIRMING DENIAL OF BENEFITS - 4

(AR 853.) Another examiner noted Plaintiff's presentation was "bizarre" and out of proportion to her industrial injury claim. (AR 1934.)

As to her specific symptoms, the ALJ did not err in rejecting Plaintiff's back, hip, and knee complaints. An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). The ALJ comprehensively discussed the medical evidence, noting that findings were largely normal. For example, the ALJ noted Plaintiff had normal range of motion in her back, hips, and knees. (*See, e.g.*, AR 788, 1598, 1854, 2236, 2356.) The ALJ noted another provider found Plaintiff's "mechanism of injury simply does not support" her ongoing complaints as to her back, hip, and knee pain. (AR 792.) Other providers noted Plaintiff benefitted from physical therapy, and had little to no back pain with functional activities. (*See* AR 2236–38, 2588.)

The ALJ also reasonably found Plaintiff's daily activities contradicted her claims regarding the severity of her back, hip, and knee pain. An ALJ may reject a plaintiff's symptom testimony based on her daily activities if they contradict her testimony or "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Plaintiff reported doing "excellent" in early 2019, and regularly reported being able to clean, cook (for her family and for her church), wash dishes, vacuum, and take walks. (*See, e.g.*, AR 459–61, 881, 2248, 2259, 2261, 2447, 2468, 2588.) She was able to re-pot a heavy houseplant without her back pain flaring up. (AR 2578.)

Turning to Plaintiff's carpal tunnel symptoms, the ALJ did not err in rejecting her testimony regarding these symptoms. The ALJ noted Plaintiff reported dramatic improvement in her left arm after carpal tunnel release surgery. (AR 1854.) She had the same surgery on her

right arm in July 2018, and did not receive further treatment on that arm. (*See* AR 2258, 2343.) Moreover, contrary to Plaintiff's claims that she could not cook or do chores due to her symptoms, as mentioned above, she could cook, clean, and do chores. (*See, e.g.*, AR 459–61, 854–55, 2261, 2468.) Plaintiff has failed to show the ALJ unreasonably interpreted this evidence.

The ALJ finally did not err in rejecting Plaintiff's claims regarding her mental health symptoms. The ALJ found Plaintiff showed only mild deficits during evaluations. (*See* AR 20–22.) This was a reasonable conclusion, as the ALJ noted dozens of occasions on which Plaintiff presented with euthymic mood, normal appearance and speech, and logical/linear/coherent thought processes. (*See, e.g.*, AR 855–58, 1152, 1173, 1184, 1196, 1219, 1237, 1271, 1297, 1757, 1773, 1786, 1795, 1801, 1817, 1823, 2128, 2140, 2169, 2222.)

The ALJ also found Plaintiff's daily activities contradicted her testimony regarding the severity of her mental symptoms. (*See* AR 20–22.) The ALJ noted Plaintiff could cook, drive, and deal with her finances. (*See, e.g.*, AR 459–61, 855, 2260.) She could serve as her husband's caregiver. (*See* AR 1201, 1649, 1934.) Plaintiff could focus enough to read through her workers' compensation claim and the Washington Administrative Code to discuss them with her attorney. (AR 1153, 1297.) Plaintiff also could focus enough to write a short book. (AR 1802.)

In sum, the ALJ provided multiple clear and convincing reasons to reject Plaintiff's symptom testimony, and those reasons were supported by substantial evidence. The ALJ therefore did not harmfully err.

B.     **Physical Capacity Opinions**

Plaintiff contends the ALJ erred by rejecting three medical providers' opinions regarding her physical capacities: Dr. Thompson, Ms. Lientz, and Ms. Hiller. (Dkt. No. 9 at 7–10.) The

Court will address each provider's opinions in turn.

### 1. Dr. Thompson's Opinions

Plaintiff argues the ALJ erred by rejecting Dr. Thompson's opinions on Plaintiff's ability to reach, hold, handle, and manipulate. (Dkt. No. 9 at 9–10.) Dr. Thompson completed a medical questionnaire from Plaintiff's counsel in June 2018. (AR 1829–30.) He opined Plaintiff had bilateral carpal tunnel syndrome, she was scheduled for surgery, and she would be limited to occasional (meaning up to one-third of an eight-hour workday) reaching, holding, handling, and manipulating. (*Id.*)

An ALJ may only reject the uncontradicted opinions of a treating doctor by providing "'clear and convincing' reasons."[3] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). If the treating doctor's opinions are contradicted, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Dr. Thompson's opinions were contradicted by the opinions of Joan Sullivan, M.D., and Guillermo Rubio, M.D., at a minimum, so the specific and legitimate standard applies. (*See* AR 209, 792, 1480–82.)

The ALJ did not harmfully err in rejecting Dr. Thompson's opinions. First, an ALJ may reject a doctor's opinions when they are contradicted by the medical evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Dr. Thompson found Plaintiff's left wrist symptoms dramatically improved after undergoing carpal tunnel release

---

[3] The Social Security Administration has revised its regulations for evaluating medical evidence, but the revised regulations apply only to claims filed on or after March 27, 2017 and therefore are not relevant to this case. *See* 20 C.F.R. § 404.1527 (applicable to claims filed before March 27, 2017); 20 C.F.R. § 404.1520c (applicable to claims filed after March 27, 2017).

surgery. (AR 1854.) The ALJ reasonably concluded this contradicted Dr. Thompson's opinions with respect to Plaintiff's left wrist and hand. (*See* AR 44.)

Second, an ALJ may reject a doctor's opinions when they are contradicted by the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601–02 (9th Cir. 1999). As the ALJ explained in discussing Plaintiff's testimony, Plaintiff's daily activities, such as cooking, cleaning, and doing other household chores, contradicted Dr. Thompson's opinions as to Plaintiff's left and right wrists and hands. (*See, e.g.*, AR 459–61, 854–55, 2261, 2468.) The ALJ reasonably determined this contradicted Dr. Thompson's opined limitations. (*See* AR 44.) The ALJ therefore gave specific and legitimate reasons to reject Dr. Thompson's opinions on Plaintiff's ability to reach, hold, handle, and manipulate, and did not harmfully err.

### 2. Ms. Lientz's Opinions

Plaintiff argues the ALJ erred by rejecting Ms. Lientz's opinions on Plaintiff's lifting capacity. (Dkt. No. 9 at 7–8.) Ms. Lientz performed a functional capacities evaluation in January 2016. (AR 864–81.) Ms. Lientz opined, among other things, that Plaintiff could occasionally lift 25 pounds from the floor to her waist, and from knee to waist, and frequently lift 12.5 pounds over those spans. (AR 865.) She opined Plaintiff could occasionally lift 20 pounds from waist to shoulder, and frequently lift 10 pounds over that span. (*Id.*) Ms. Lientz opined Plaintiff could occasionally lift 15 pounds from shoulder to overhead, and frequently lift 7.5 pounds over that span. (*Id.*)

Ms. Lientz is a Doctor of Physical Therapy, but the regulations recognize only medical or osteopathic physicians as "acceptable medical sources." 20 C.F.R. § 404.1502(a)(1).[4] The ALJ

---

[4] The Administration's revised regulations changed who is considered an acceptable medical source, but did not change treatment of opinions from physical therapists like Ms. Lientz. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017

needed only to provide germane reasons for rejecting Ms. Lientz's opinions. *See Molina*, 674 F.3d at 1111.

The ALJ did not err in rejecting Ms. Lientz's opinions. Contradiction with the medical record is a valid reason to reject a medical source's opinions. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The ALJ reasoned Ms. Lientz's opinions were "somewhat consistent with" the overall medical record, but adjusted the physical limitations based on Plaintiff's demonstrated functioning during an interdisciplinary pain program and Plaintiff's self-limiting behavior. (*Id.*) At the end of that pain program, which took place in the months after Ms. Lientz signed her opinions, Plaintiff demonstrated the capacity to lift 35 pounds occasionally and 30 pounds frequently. (AR 1000–01.) The ALJ reasonably found this contradicted Ms. Lientz's lifting restrictions, and thus gave a germane reason for rejecting Ms. Lientz's lifting opinions.

### 3. Ms. Hiller's Opinions

Plaintiff argues the ALJ erred by rejecting Ms. Hiller's opinions on Plaintiff's functional capacities. (Dkt. No. 9 at 10–11.) Ms. Hiller opined Plaintiff could lift 17 pounds occasionally, and 8.5 pounds frequently. (AR 2590, 2592.) Ms. Hiller opined Plaintiff could carry 10 pounds occasionally, and five pounds frequently. (*Id.*) She opined Plaintiff could push and pull 120 pounds. (AR 2590.) She opined Plaintiff could not stand for more than 15 minutes continuously, sit for more than 20 minutes continuously, and walk for 0.7 miles continuously. (AR 2590, 2592.) Ms. Hiller opined Plaintiff could not climb stairs, crouch, kneel, or crawl. (AR 2592.)

Like with Ms. Lientz, the ALJ needed to provide germane reasons to reject Ms. Hiller's opinions. *See Molina*, 674 F.3d at 1111. The ALJ rejected Ms. Hiller's opinions because they

---

WL 168819 (Jan. 18, 2017).

were inconsistent with the medical record. (AR 44.) First, the ALJ noted Ms. Hiller's walking limitations were inconsistent with Plaintiff's own reports that she was walking 30 to 45 minutes daily. (*See* AR 44, 2461.) Second, the ALJ noted Ms. Hiller's stair-climbing limitations were inconsistent with the medical evidence, which showed Plaintiff had no difficulty with stairs even though she did not like them "because of fatigue and 'stumbling.'" (*See* AR 44, 2237.) Third, the ALJ noted Plaintiff reported little to no back pain with her functional activities, and was able to do most tasks around her home without back pain or difficulty. (*See* AR 44, 2582, 2588.) The ALJ's reasoning, particularly when coupled with her overall discussion of the medical evidence as it related to Plaintiff's testimony, is supported by substantial evidence. The ALJ therefore did not harmfully err in rejecting Ms. Hiller's opinions.

### C.  Mental Capacity Opinions

Plaintiff contends the ALJ erred by rejecting the mental capacity opinions from Dr. Tognazzini, Dr. Wanwig, and Ms. TeSelle-DeLisa. (Dkt. No. 9 at 8–9, 11–12.) Unlike the physical capacity opinions, Plaintiff challenges the ALJ's rejection of the entirety of these mental capacity opinions rather than any specific portions of them. The Court again addresses each provider's opinions in turn.

#### 1.  Dr. Tognazzini's Opinions

Dr. Tognazzini evaluated Plaintiff on September 27, 2018. (AR 2104–06.) In her report, she noted findings relating to depression, anxiety, and posttraumatic stress disorder, but did not identify any work limitations at that time. (*Id.*) In May 2020, Dr. Tognazzini completed a report in which she opined Plaintiff had moderate to extreme limitations in her abilities related to understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (AR 2566–68.) Dr. Tognazzini opined Plaintiff could not work on a regular and

sustained basis due to her mental impairments. (AR 2568.)

Dr. Tognazzini's opinions were contradicted by the opinions of Lezlie Pickett, Ph.D., (AR 858), Jan Lewis, Ph.D., (AR 192–93), and Leslie Postovoit, Ph.D., (AR 206–07), so the ALJ needed to give specific and legitimate reasons to reject them. *See Lester*, 81 F.3d at 830.

The ALJ did not err in rejecting Dr. Tognazzini's opinions. The ALJ rejected Dr. Tognazzini's functional capacity opinions because she found they were inconsistent with the overall medical record and Plaintiff's daily activities. (AR 45.) The ALJ's analysis of those inconsistencies largely mirrored her analysis of them with respect to Plaintiff's mental symptom testimony. (*See* AR 20–22.) That analysis was supported by substantial evidence, and satisfies the specific and legitimate standard with respect to Dr. Tognazzini's functional capacity opinions just as it satisfied the clear and convincing standard with respect to Plaintiff's testimony. *See supra* Part III.A.

The ALJ also did not err in rejecting Dr. Tognazzini's opinion that Plaintiff cannot work. As the ALJ noted, findings that a claimant is disabled or unable to work are reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see McLeod v. Astrue*, 640 F.3d 881, 884–85 (9th Cir. 2011). The ALJ accordingly did not err in rejecting Dr. Tognazzini's overall opinions.

2. <u>Dr. Wanwig's Opinions</u>

Dr. Wanwig completed a mental residual functional capacity assessment in June 2020. (AR 2569–72.) He opined Plaintiff had mild to extreme limitations in her abilities related to understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (AR 2570–72.) He opined Plaintiff could not work on a regular and sustained basis due to her mental impairments. (AR 2572.)

Like Dr. Tognazzini's opinions, Dr. Wanwig's opinions were contradicted by the

opinions of Dr. Pickett, (AR 858), Dr. Lewis, (AR 192–93), and Dr. Postovoit, (AR 206–07), so the ALJ needed to give specific and legitimate reasons to reject them. *See Lester*, 81 F.3d at 830–31.

The ALJ's reasons for rejecting Dr. Wanwig's opinions were nearly identical to her reasons for rejecting Dr. Tognazzini's opinions. (*Compare* AR 45–46, *with* AR 46–47.) Those reasons are equally valid with respect to Dr. Wanwig's opinions, and thus the ALJ did not err in rejecting Dr. Wanwig's opinions.

### 3. Ms. TeSelle-DeLisa's Opinions

Ms. TeSelle-DeLisa, Plaintiff's therapist, completed a medical source statement in February 2018. (AR 1714–16.) Ms. TeSelle-DeLisa opined Plaintiff had marked limitations in her ability to work in coordination with or proximity to others without being unduly distracted by them, interact appropriately with the general public, and travel in unfamiliar places or use public transportation. (AR 1715–16.) Ms. TeSelle-DeLisa opined Plaintiff otherwise had no, mild, or moderate limitations in her mental abilities. (AR 1714–16.)

Ms. TeSelle-DeLisa is another medical source, so the ALJ needed to give germane reasons to reject her opinions. *See Molina*, 674 F.3d at 1111. The ALJ rejected Ms. TeSelle-DeLisa's opinions because they were inconsistent with the medical record. (AR 43.) As with Dr. Tognazzini's and Dr. Wanwig's opinions, this was a reasonable conclusion. *See supra* Part III.C.1–2. The ALJ added that Ms. TeSelle-DeLisa's opinions where inconsistent with Plaintiff's "treatment records indicating that her symptoms are situational in nature and effectively controlled with coping techniques and medications." (AR 43.) The ALJ's discussion here was too vague, as she offered no support in the record for this finding. (*See id.*) Nonetheless, the error was harmless because the ALJ's overall reasoning was well-supported.

*See Molina*, 674 F.3d at 1115 (explaining that "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion'" (quoting *Batson*, 359 F.3d at 1197)).

The ALJ also rejected Ms. TeSelle-DeLisa's opinions because they were inconsistent with Plaintiff's "demonstrated functioning in her personal life." (AR 43.) The ALJ here cited many of the same activities as she had when discussing Plaintiff's mental symptom testimony. (*Compare* AR 44, *with* AR 20–22.) The ALJ reasonably found those activities, including serving as her husband's caregiver, writing a book, and researching the Washington Administrative Code, contradicted Ms. TeSelle-DeLisa's opinions just as they contradicted Plaintiff's testimony. The ALJ did not harmfully err in rejecting Ms. TeSelle-DeLisa's opinions.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and the case is DISMISSED with prejudice.

DATED this 28th day of March 2022.

David G. Estudillo
United States District Judge